Hearing:
September 21, 1993

CV
Paper No. 24

MAIL ROOM FEB 14 1994 PAT. & TRADEMARK OFF.

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board

In re Brooklyn Bottling Corporation

Serial No. 74/104,891

Barry Kramer of Kramer, Brufsky & Cifelli, P.C. for Brooklyn Bottling Corporation.

Patricia Malesardi, Trademark Examining Attorney, Law Office 14 (R. Ellsworth Williams, Managing Attorney).

-----

Before Simms, Seeherman and Quinn, Administrative Trademark Judges.

Opinion by Simms, Administrative Trademark Judge:

Brooklyn Bottling Corporation (applicant), a New York corporation, has appealed from the final refusal of the Trademark Examining Attorney to register the mark TROPICAL FANTASY for soft drinks.(1) The Examining Attorney has refused registration under Section 2(d) of the Act, 15 U.S.C. 1052(d),

(1) Application Serial No. 74/104,891, filed October 11, 1990, claiming use since April 1988.

on the basis of Registration No. 1,273,016, issued April 3, 1984, for the mark FANTASY for "soft drinks (sic) concentrates."(2) The Examining Attorney has also required a disclaimer of the word "TROPICAL," arguing that this term is merely descriptive of the flavor of applicant's soft drinks. At the oral hearing, applicant's attorney offered to disclaim the word "TROPICAL" to remove this as an issue before us. Accordingly, the disclaimer requirement is no longer considered to be an issue on appeal.

With respect to the issue of likelihood of confusion, the Examining Attorney argues that the mere addition of the term "TROPICAL" does not result in a mark that is substantially different from the registered mark because this additional word is a descriptive term that does not alter the meaning of the mark. In this regard, the Examining Attorney has referred to third-party registrations and to Nexis excerpts which show that the term "TROPICAL" in marks of other registrants has been disclaimed and that the word "tropical" is a descriptive term when used with the word "flavor(s)" in conjunction with beverages, ice cream, yogurt and other food products. It is the position of the Examining Attorney, therefore, that the dominant feature of applicant's mark is the term "FANTASY," and that the commercial impressions created by the marks are "highly similar." (Examining Attorney's brief, 3).

---

(2) The computerized records of this Office show that a combined Sections 8 and 15 verification has been filed.

Serial No. 74/104,891

With respect to the goods, the Examining Attorney argues that the relatedness of soft drinks and soft drink concentrates has been noted by the Board in a prior case, The Seven-Up Company v. Aaron, 216 USPQ 807, 809 (TTAB 1982), where the Board stated:

> The goods of the parties both involve soft drinks--in opposer's case the end product itself and for applicant, a concentrate essential for and the critical ingredient in production of soft drinks. The relatedness of such food products for purposes of assessing likelihood of confusion is, in the Board's view, quite evident and has been recognized in earlier decisions involving concentrate goods.

The Examining Attorney argues that, because the description in the cited registration identifies the goods simply as soft drink concentrates without limitation as to their nature and channels of trade, one must presume that the registration encompasses all goods of the type described, that they move in all normal channels of trade and that they are available to all potential customers. Therefore, registrant might sell its soft drink concentrates to bottlers who could eventually produce soft drinks therefrom and sell them to the public under the mark "FANTASY." With respect to the various third-party registrations which applicant has referred to in a supplemental appeal brief, the Examining Attorney argues that, even if those registrations had been made of record, those third-party marks contain other wording and that the goods and services listed in

those registrations are unrelated (FANTASY CREATIONS for baking mix kits, FRUSEN GLADJE FANTASY for ice cream store services, FANTASY LEGS for processed fish and FLYING FRUIT FANTASY for restaurant services, among others).

Applicant, on the other hand, argues that the respective marks have different commercial impressions and that applicant's soft drinks and registrant's soft drink concentrates are different goods which are sold to different classes of purchasers. Applicant argues that its mark suggests that its soft drinks quench the thirst of one in a warm tropical climate or suggests the cooling effect of a drink (like a tropical breeze). Applicant's attorney states that while at one time concentrates were sold to drug stores and other retail establishments for mixing with other ingredients at a soda fountain, such practice is no longer common. According to applicant, soft drinks are sold to the general public while registrant's soft drink concentrates are sold only to bottlers and institutional processors who then market the resulting product under their own marks. With respect to the Seven-Up case, applicant argues that the relatedness of these products is no longer the case. Also, because bottlers and institutional purchasers would be more sophisticated and discriminating and know the source of their goods, confusion will not be likely even if they come into contact with applicant's mark in connection with soft drinks.(3) With

(3) Applicant's declaration submitted with its appeal brief is untimely and cannot be considered. See Trademark Rule 2.142(d).

Serial No. 74/104,891

respect to the third-party registrations, applicant argues that the term "FANTASY" should be considered a relatively weak indication of origin.

After careful consideration of the arguments of the respective attorneys, we are inclined to agree with applicant that confusion is unlikely. The primary reason for this conclusion is our belief that soft drink concentrates are sold in different channels of trade from applicant's soft drinks. The Examining Attorney does not seriously question this statement but relies primarily upon a Board decision finding that these goods are related, and then argues that bottlers (to whom registrant's goods are sold) may produce soft drinks under this mark. The Examining Attorney appears to posit the case, therefore, of these marks both being used on soft drinks.

There is no question that soft drinks and soft drink concentrates are "related products" to the extent that they both obviously have to do with the making of soft drinks and can be made by the same soft drink companies. However, the Board decision mentioned above does not discuss which purchasers are likely to be confused. In this regard, we have recently been reminded that the essential question in these cases is "whether there is likely to be sufficient overlap of the respective purchasers of the parties' goods and services to

confuse actual and potential purchasers." Electronic Design & Sales Inc. v. Electronic Data Systems Corp., 954 F.2d 713, 21 USPQ2d 1388, 1390 (Fed. Cir. 1992).

The problem we have with the Examining Attorney's argument is that there is simply no evidence of record from which we might conclude that soft drink concentrates (the goods listed in the registration) are sold to the same class of purchasers who buy soft drinks. In this regard, we point out that the burden is on the Examining Attorney to demonstrate that confusion is likely. Indeed, the Examining Attorney does not even argue that soft drink concentrates are sold to the general public but rather concedes that they would be sold to bottlers.

It is true, of course, that, with respect to a description of goods which is unlimited as to channels of trade or classes of purchasers, we must assume that the goods travel in all channels of trade <u>normal</u> for those goods. There is simply nothing of record from which we may discern what are normal channels of trade for soft drink concentrates. However, it appears to us that these products are simply not available for purchase in supermarkets and grocery stores. Applicant has argued, and we are inclined to believe, that soft drink concentrates are normally sold to relatively sophisticated

purchasers such as bottlers or other processors who know the source of the supplies they purchase.(4)

Considering the absence of evidence concerning the channels of trade of soft drink concentrates and that these concentrates would presumably be purchased by bottlers or wholesale processors (and not by the general public) while soft drinks would, of course, be bought by the general purchasing public, we conclude that, on this record, these goods do not appear to meet in the marketplace. Confusion, therefore, does not seem likely.

We should emphasize that we are not here dealing with a cited registration for soft drinks. If we were, or if we had

---

(4) While one can, of course, find frozen concentrates for making orange juice, lemonade, etc., in frozen food sections of supermarkets and grocery stores, these products are not soft drink concentrates as we understand this term. ( A soft drink is generally considered a carbonated beverage. See Food & Nutrition Encyclopedia, Vol. 2 (I-Z) (1st ed. 1983) at 2002.) A soft drink concentrate would be a product to which a sweetener may be added and then mixed with carbonated water.

The dissent has faulted us for accepting applicant's argument that concentrates would be purchased by bottlers and other processors. We point out, however, that the Examining Attorney has also accepted this argument. Certainly, if the Examining Attorney, who is presumably knowledgeable about the beverage class, does not believe that concentrates are sold to others than bottlers and processors, we do not believe that "common knowledge" tells us otherwise. Indeed, if registrant's soft drink concentrates are similar to those involved in the Seven-Up case, then they are sold to bottling companies. Not only has the dissent taken as "common knowledge" something which we do not believe to be the case, but also that opinion has hypothesized a situation for confusion which is not the Examining Attorney's "theory of the case." We again point out that this record is devoid of evidence concerning the channels of commerce for soft drink concentrate (other than the concessions of fact in the Examining Attorney's written arguments), and that the burden of showing likelihood of confusion rests with the Examining Attorney.

before us an opposition asserting use of a similar mark in connection with both soft drink concentrates as well as soft drinks, or one involving an identical mark or a famous mark (to which a broader "scope of protection" is given), we might well reach a different result.

Finally, with respect to the marks, we note that they are not identical but differ somewhat in sound and appearance. We are also inclined to agree with applicant that its mark (see reproduction below of actual specimen) has a different commercial impression from that which may be engendered by the single word mark "FANTASY." In this regard, and contrary to the suggestion made in the dissenting opinion, trade dress, even when not part of the mark sought to be registered, can be considered as evidence that a word mark projects a different meaning or commercial impression. See Specialty Brands, Inc. v. Coffee Bean Distributors, Inc., 748 F.2d 669, 223 USPQ 1281. 1284 (Fed. Cir. 1984), Burns Philp Food Inc. v. Modern Products Inc., 24 USPQ2d 1157, 1159-60 (TTAB 1992), aff'd., No. 93-1038 (Fed. Cir., June 14, 1993) (unpublished but reported at 28 USPQ2d 1687) and J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 20.04[1] (3rd ed. 1992).

Serial No. 74/104,891

As suggested by applicant's labels, purchasers are likely to believe that applicant's mark suggests a tropical paradise. This is somewhat different from the general commercial impression engendered simply by the mark "FANTASY," which has no reference to "tropical" at all.(5)

Decision: The refusal of registration under Section 2(d) is reversed but the requirement for a disclaimer is affirmed. Applicant is allowed until thirty days from the date of this opinion in which to submit the required disclaimer.

R. L. Simms

T. J. Quinn
Administrative Trademark Judges
Trademark Trial and Appeal Board

Seeherman, Administrative Trademark Judge, dissenting:

A primary reason for the majority's decision that confusion is not likely is that the difference between concentrates for soft drinks, and soft drinks themselves, mandates that the products will be sold in different channels of trade to different consumers. In particular, the majority has accepted applicant's argument that soft drink concentrates would be purchased by bottlers or wholesale processors, while soft drinks would be bought

---

(5) With respect to the relationship of raw materials and finished products, noted by the dissent, there is, of course, no per se rule that marks for these goods are confusingly similar. In fact, in a recent case involving raw materials and finished products, the Board found no likelihood of confusion. See In re Albert Trostel & Sons Company, ___ USPQ2d ___ (TTAB Nov. 3, 1993).

by the general public, so that the goods would not meet in the marketplace.

Applicant bases its argument on an assertion that "while at one time concentrates were sold to drug stores and other retail establishments for mixing with other ingredients at a fountain, and then dispensing the mixture as a soft drink, such practice is no longer the norm." Reply brief, pp. 2-3. The difficulty with applicant's position is that it is contradicted by common knowledge. Fountain beverages, as opposed to beverages which are prepackaged in bottles and cans, are commonly dispensed at snack bars, movie theaters, fast food establishments and casual restaurants. Further, in many such establishments the purchaser dispenses the beverage himself. Thus, applicant has failed to show any change in circumstances which would make incorrect the 1982 finding of the Board, in a case which involved the same goods as those at issue herein, that:

> The goods of the parties both involve soft drinks--in opposer's case the end product itself and for applicant, a concentrate essential for and the critical ingredient in production of soft drinks. The relatedness of such food products for purposes of assessing likelihood of confusion is, in the Board's view, quite evident and has been recognized in earlier decisions involving concentrate goods. [Citations omitted.]
> **The Seven-Up Company v. Aaron**, 216 USPQ 807, 809 (TTAB 1987).

Moreover, the opportunity for the general public to be exposed to concentrates as an ingredient in soft drinks involves more than merely observing the mixing which occurs as the purchaser fills his own container from a soda machine, or watches it filled at a snack bar. The employees who fill or refill soda

Serial No. 74/104,891

fountain beverage machines are part of the general public, too, and are not merely institutional processors. It is common knowledge that much of the population of the United States works, or has worked at some time in their lives, in fast food restaurants, where they would see the cartons of concentrate used in soft drink machines, and would even have the job of pouring the concentrate into the machines.

These employee members of the general public, familiar with concentrate sold under the trademark FANTASY, are likely to believe that soft drinks sold under the trademark TROPICAL FANTASY emanate from the same source. Although, as the majority has pointed out, there are specific differences in the marks stemming from the addition of the element TROPICAL in applicant's mark, I do not believe that, given the obvious descriptive significance of TROPICAL in connection with the flavor of soft drinks, this difference is sufficient to distinguish the marks. In this connection, it is a well-established principle of trademark law that one cannot appropriate the entire mark of another and avoid a likelihood of confusion by the addition thereto of a descriptive term. **Bellbrook Dairies, Inc. v. Hawthorn-Mellody Dairy, Inc.**, 117 USPQ 213, 214 (CCPA 1958). As for the majority's position that the "tropical" motif of applicant's specimen labels creates a different commercial impression for applicant's mark, it hardly needs to be pointed out that applicant has applied for registration of its mark in typed form, and the manner in which it displays the mark, including the depiction of palm trees and the like on its labels, can change at any time.

Serial No. 74/104,891

I agree with the majority that the burden is on the Examining Attorney to demonstrate that confusion is likely, and I also recognize that the Examining Attorney has not put in any evidence, per se, on the relationship between the goods, but has relied on the previous Board cases which have found that soft drink concentrates and soft drinks are related. On the other hand, applicant itself has asserted that the Board has the authority to, and should, take judicial notice of indisputable adjudicative facts. In this case, I think it appropriate to recognize that soft drink concentrates are sold to or used not only by bottlers, but by everyone who has had experience in dispensing fountain drinks, and that this group encompasses much of the United States population as a whole.

The majority asserts that this is not common knowledge because the Examining Attorney, "presumably knowledgeable about the beverage class," did not raise it in arguing that confusion is likely.(6) I think the majority makes too much of a leap to presume from the Examining Attorney's failure to raise this argument of overlap in consumers that she is unaware that restaurant and snack bar employees who dispense fountain drinks come into contact with soft drink concentrates. It is clear that the Examining Attorney was relying on the previous findings of this Board that soft drink concentrates and soft drinks are related,

(6) The language used by the majority in footnote 4 is that "the dissent has faulted us for accepting applicant's argument that concentrates would be purchased by bottlers and other processors." To clarify, I do not disagree that bottlers and other processors are the purchasers of soft drink concentrates. I part company with the majority in the view that bottlers and other processors are the <u>only</u> purchasers of such concentrates.

and her argument on the relationship between the goods was otherwise rather limited. However, in her brief she did point out that "registrant would be free at any time to produce and market its soft drink concentrates to other purchasers [other than institutional processors] and in other channels of trade in ways which could cause confusion." Brief, p. 4. Moreover, at oral argument she asserted that registrant's soft drink concentrates could be sold to the ultimate consumer.

More telling is the fact that applicant itself has recognized that a relationship has existed between soft drink concentrates and soft drinks insofar as the fountain marketing of these products is concerned. Applicant's position is simply that, since 1982 when the last case finding such a relationship was decided, marketing reality has changed. As I have stated, I find applicant's position to be contrary to what is general knowledge.

Finally, I think the majority's reliance on the distinction between soft drink concentrates and soft drinks in its finding of no likelihood of confusion ("we should emphasize that we are not here dealing with a cited registration for soft drinks," p. 7) is not well founded. It is common knowledge that soft drink concentrates are used in making soft drinks, and that the resultant soft drinks are sold under the same trademarks as the marks for the concentrates. I do not believe that the registrant's goods must be identified as soft drinks per se, rather than soft drink concentrates, in order to support a finding of likelihood of confusion, and that to impose such a requirement severely limits the protection provided by a registration for soft drink

Serial No. 74/104,891

concentrate. Not only has this Board previously held that soft drink concentrate and soft drinks are sufficiently related that the use of confusingly similar marks on both is likely to cause confusion, but has found such an relationship vis-a-vis likelihood of confusion in analogous circumstances between raw materials and finished goods, e.g., fabric and clothing.

    For the foregoing reasons, I would affirm the refusal of registration.

E. J. Seeherman
Administrative Trademark Judge
Trademark Trial and Appeal Board

26 JAN 1994