```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X :
BROOKLYN BOTTLING OF MILTON,           :
NEW YORK, INC.,                        :      07 CIV 08483 (AKH)
                    Plaintiff,         :
                                       :
                                       :
                                       :
                                       :
     -against-                         :
                                       :
ECUABEVERAGE, CORP.                    :
                    Defendant.         :
------------------------------------------------------X :
```

# MEMORANDUM OF LAW IN OPPOSITION TO
# DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGEMENT


Of Counsel:
Jeffrey E. Jacobson
Bruce E. Colfin

                                                     Jacobson & Colfin, P.C.
                                                     Attorneys for Plaintiff
                                                     60 Madison Avenue, Suite 1026
                                                     New York, NY 10010
                                                     212-691-5630


TO:

Edwin D. Schindler (ES 7882)
Attorney for Defendant
5 Hirsch Avenue
P.O. Box 966
Coram, NY 11727-0966

## TABLE OF CONTENTS

TABLE OF CASES & AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. EXAMINATION OF THE TRADEMARK APPLICATION . . . . . . . . . . . . . . . . . . . . . . . 4

III. PLAINTIFF'S REGISTERED MARK IS INCONTESTABLE . . . . . . . . . . . . . . . . . . . . . 5

IV. A TRADEMARK IS VIEWED IN ITS TOTALITY, NOT IN ITS PARTS . . . . . . . . . . . . 6

V. ANALYSIS OF TRADEMARK INFRINGEMENT: LIKELIHOOD OF CONFUSION . . . . 7

VI. THE LEGAL STANDARD FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF CASES & AUTHORITIES

Anderson v.Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Chemetron Corp. v. Morris Coupling & Clamp Co., 203 USPQ 537 (TTAB 1979) . . . . . . . . . . 8

Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce,
228 USPQ 689 (TTAB 1986), *aff''d* 1 USPQ2d 1813 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . 8

Donahue v. Windsor Locks Board of Fire Commissioners,
834 F.2d 54, 58 (2d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,
228 F.3d 56, 61 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

EZ-Tixz, Inc. v. Hit-Tix, Inc., 919 F.Supp. 919 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 10

Gallo v. Prudential Residential Servs., Ltd. Partnership,
22 F.3d 1219, 1223-24 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072 (2d Cir. 1993) . . . . . . . . . . . . . . . 7

Industrial Nucleonics Corp. v. Hinde, 475 F.2d 1197, 177 USPQ 386 (C.C.P.A. 1973). . . . . . . . 9

In re El Torito Restaurants Inc., 9 USPQ2d 2002 (TTAB, 1988) . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Equitable Bancorporation, 229 USPQ 709 (TTAB, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re West Point-Pepperell, Inc., 468 F.2d 200, 175 USPQ 558 (C.C.P.A. 1972) . . . . . . . . . . . . 8

Jobson v. Henne, 355 F. 2d 129, 133 (2d Cir., 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Levine v. McDonald's Corp., 735 F.Supp. 92, 95 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . 11

Louis Vuitton Malletier v. Burlington Coat Factory, 426 F.3d 532 (2d Cir. 2005) . . . . . . . . . . 7

Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108 (2nd Cir., 2006)  . . . . . . . . . . 6

On-line Careline Inc. v. America Online Inc.,
229 F.3d 1080, 56 USPQ2d 1471 (Fed. Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 205. (1985) . . . . . . . . . . . . . . . . . . . 6

Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir. 1961) . . . . . . . . . . . . . 7

Recot, Inc. v. M.C. Becton, 214 F.2d 1322, 54 USPQ2d 1894, 1890 (Fed. Cir. 2000) . . . . . . . . 8

Sealed Air Corp. v. Scott Paper Co., 190 USPQ 106 (TTAB 1975) . . . . . . . . . . . . . . . . . . . . . . 8

Sun-Fun Products v. Suntan Research & Development,
656 F.2d 186, 189 (5th Cir. 1981)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

 Tektronix, Inc. v. Daktronics, Inc., 534 F.2d 915, 189 USPQ 693 (C.C.P.A., 1976) . . . . . . . . . 6

T. W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n,
809 F.2d 626, 630-31 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Visual Information Inst., Inc. v. Vicon Indus. Inc., 209 USPQ 179 (TTAB 1980)  . . . . . . . . . . 8

Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 209, (2000). . . . . . . . . . . . . . . . . . . . 6

Young v. County of Fulton, 160 F.3d 899, 901 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 10

## Statutes

Fed. R. Civ. P. 56 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15 U.S.C. §§1051 *et seq.*, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. Section 1057(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. Section 1057(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. Section 1065 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

15 U.S.C. Section 1072 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. Section 1115(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. Section 1115(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

15 U.S.C. Section 1121 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. Section 1124 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. Section 1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15 U.S.C..Section 1155(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Lanham Act section 33(b), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

TMEP §201.02 (TRADEMARK MANUAL of EXAMINING PROCEDURE) . . . . . . . . . . . . . 5

TMEP §§1207.01(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

TMEP §§1207.01(b)(ii) and (b)(iii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Trademark Rules of Practice, 37 C.F.R. Part 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X :
BROOKLYN BOTTLING OF MILTON,              :
NEW YORK, INC.,                           :      07 CIV 08483 (AKH)
                    Plaintiff,            :
                                          :
                                          :
        -against-                         :
                                          :
ECUABEVERAGE, CORP.                       :
                    Defendant.            :
-------------------------------------------------------X :
```

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGEMENT

### PRELIMINARY STATEMENT

This Memorandum of Law is submitted by Plaintiff Brooklyn Bottling of Milton, New York, Inc., in opposition to Defendant Ecuabeverage Corp.'s motion for Partial Summary Judgement on the First, Second and Sixth Causes of Action of the Amended Complaint.

### STATEMENT OF FACTS

Brooklyn Bottling of Milton, New York, Inc., ("Brooklyn Bottling" the plaintiff in this action, is a corporation organized under the laws of the State of New York. Brooklyn Bottling is in the business of manufacturing and bottling soft drinks, juices and water. Brooklyn Bottling of Milton, New York, Inc. has acquired the rights and good will in the TROPICAL PURO SABOR NACIONAL mark.. The TROPICAL PURO SABOR NACIONAL mark is a valid trademark, registration no. 1474395 for soft drinks and flavored syrups used in the preparation of making soft drinks, registered with the United States Patent and Trademark Office on January 26, 1988.

1

Trademarks and Tradenames registered with the United States Patent and Trademark Office are valuable intellectual property. The business of Brooklyn Bottling depends, in part, on the recognition and good will associated with its TROPICAL PURO SABOR NACIONAL mark. The brand recognition and good will associated with this mark gives Brooklyn Bottling a competitive edge over its competitors in the same market.

Ecuabeverage, Corp. has adopted a mark which tries to build on the good will already associated with Plaintiff's mark. Through various owners, Plaintiff's mark has been in use in commerce since approximately 1966. Defendant adopted the following mark in approximately 1990: TOME TROPICAL PRODUCTO ORIGINAL ECUATORIANO PURO SABOR ECUATORIANO SODA DE FRESA. Defendant's mark incorporates and infringes upon several elements of Plaintiff's trademark and trade dress which has been generating good will since approximately 1966.

Ecuabeverage, Corp. has imported tropical flavored soft drinks into the United States using the TROPICAL PURO SABOR NACIONAL mark or a substantially similar mark. Ecuabeverage's Corp.'s use of this mark or a substantially similar mark has caused confusion among consumers as to the source of Plaintiff's and Defendant's beverages. Ecuabeverage, Corp. does not deny that it has used this mark or substantially similar marks, but can only challenge the validity of the TROPICAL PURO SABOR NACIONAL mark. Nor does the defendant challenge Plaintiff's allegations that consumers are confused as to the source of the tropical flavored beverages.

## I. ARGUMENT

In their motion for partial summary judgment, the Defendant argues that Plaintiff's mark

registered with the United States Patent and Trademark Office, registration no. 1474395 for TROPICAL PURO SABOR NACIONAL, should not be accorded trademark protection because the mark as viewed in its individual parts does not warrant trademark protection. (Hereinafter referred to as the Mark.)

The defendant's argument lacks merit. First, the United States Patent and Trademark Office examined the TROPICAL PURO SABOR NACIONAL trademark application and found that the mark warranted trademark protection. The U.S. Patent and Trademark Office is the administrative agency with exclusive jurisdiction and control over this law and its rules. Consequently, their expert determination should be afforded serious consideration.

Second, in accordance with Lanham Act, a mark used continuously in interstate commerce for at least five (5) years is incontestable. Descriptive marks used in commerce for at least five years can be deemed to have acquired secondary meaning. The Trademark in the case at bar has been used for over five years.

Third, in examining trademarks, examiners and the consumers do not look at the individual elements of a mark, but look at the totality of the mark. It is the totality of this mark and impression on the consumer that causes the confusion in which this law is designed to protect.

Additionally, Plaintiff's allegations cannot be disposed of in a motion for partial summary judgment. Plaintiff attests that defendant uses marks and has designed packaging that are so similar to Plaintiff's registered mark, that they are likely to, and are intended to, cause confusion in the market place between Plaintiff's and Defendant's beverage products.

There are serious and substantial questions of material fact in determining whether or not

defendant's use of marks and packaging actually cause or are likely to cause confusion with Plaintiff's registered mark and trade dress. This packaging is designed to confuse the consumers of this beverage.

## II. EXAMINATION OF THE TRADEMARK APPLICATION

Before a trademark can be registered, a trademark examining attorney must first examine the application and determine that the application and the mark comply with all legal and procedural requirements. A complete examination includes a search for conflicting marks and an examination of the written application, the drawing and any submitted specimens. In determining whether there are conflicting marks, the examining attorney searches the registered marks and prior pending applications for any similar marks and then determines if those similar marks are associated with similar goods and/or services. 15 U.S.C. §§1051, *et seq.*, Trademark Rules of Practice, 37 C.F.R. Part 2. Substantially similar marks cannot be registered as such marks are thought to cause confusion among consumers, thus defeating the purpose of the trademark in identifying and branding the goods and/or services and identifying the source to the consumer.

Registering a mark has several benefits.

1. Constructive notice to the public of the registrant's claim of ownership of the mark. 15 U.S.C. Section 1072;

2. A legal presumption of the registrant's ownership of the mark and the registrant's exclusive right to use the mark nationwide on or in connection with the goods and/or services listed in the registration. 15 U.S.C. Sections 1057(b) and 1115(a);

3. A date of constructive use of the mark as of the filing date of the application. 15 U.S.C. Section 1057(c); TMEP Section 201.02;

4. The ability to bring an action concerning the mark in federal court. 15 U.S.C. Section 1121;

5. The ability to file the U.S. registration with the U.S. Customs Service to prevent importation of infringing foreign goods. 15 U.S.C. Section 1124;

6. The registrant's exclusive right to use a mark in commerce on or in connection with the goods or services covered by the registration can become "incontestable," subject to certain statutory defenses.15 U.S.C. Sections 1065 and 1115(b); and

7. The use of the U.S. registration as a basis to obtain registration in foreign countries.

As the registered owner of the TROPICAL PURO SABOR NACIONAL mark, Plaintiff has the exclusive right to use the mark nationwide on or in connection with the goods and/or services listed in the registration. The defendant's use of trademarks and designs are so similar as to be likely to cause confusion infringes on the Plaintiff's exclusive rights in their mark. This was the defendant's intent.

### III. PLAINTIFF'S REGISTERED MARK IS INCONTESTABLE

Having been used exclusively and continuously since its registration on January 26, 1988, over five (5) years, the TROPICAL PURO SABOR NACIONAL mark is now incontestable. (The Mark has actually been used in commerce since 1966.) The United States Patent and Trademark Office website provides the following information: "An 'incontestable' registration is conclusive evidence of the validity of the registered mark, of the registration of the mark, of the owner's ownership of the mark and of the owner's exclusive right to use the mark with the goods/services. The claim of incontestability is subject to certain limited exceptions set forth in §§15 and 33(b) of the Trademark Act, 15 U.S.C. §§1065 and 1115(b). 15 U.S.C.

5

§§1065." "If a mark has become incontestable through five years use after federal registration and compliance with statutory formalities, than lack of distinctiveness of such a mark cannot be raised in litigation. Lanham Act section 15, 15 U.S.C.A. section 1065. That is, it is conclusively presumed either that the mark is non-descriptive, or if descriptive, has acquired secondary meaning. Lanham Act section 33(b), 15 U.S.C.A. section 1155(b)." McCarthy on Trademarks section 15:35. See also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 205 (1985)

### IV. A TRADEMARK IS VIEWED IN ITS TOTALITY, NOT IN ITS PARTS

Section 43(a) of the Lanham Act prohibits a person from using "any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods . . . ." 15 U.S.C. § 1125(a). Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108 (2nd Cir., 2006). The purpose of this section is to protect trademarks, trade dress and product designs from infringement by unregistered trademarks. EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 61 (2d Cir., 2000), Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 209, (2000). That is what is happening in the case at bar.

Despite the defendant's argument that disclaimed portions of a mark could be ignored, trademark decisions hold that the examining attorney cannot ignore a disclaimed portion of a mark and must view marks in their entireties. Tektronix, Inc. v. Daktronics, Inc., 534 F.2d 915, 189 USPQ 693 (C.C.P.A., 1976); In re El Torito Restaurants Inc., 9 USPQ2d 2002 (TTAB, 1988); In re Equitable Bancorporation, 229 USPQ 709 (TTAB, 1986). Even though the TROPICAL PURO SABOR NACIONAL mark may have disclaimed the terms PURO SABOR, these terms are still essential elements of the mark that cannot be ignored. These words attract the consumer to this drink. The disclaimer specifically states that registrant does not claim the exclusive right to use PURO SABOR apart from the mark as shown. It is the combination that causes the audience to purchase this beverage. However, the registrant does claim the exclusive

right to use the mark TROPICAL PURO SABOR NACIONAL.

Whether Defendant's use of any mark or design is likely to cause confusion in the marketplace, or does cause actual confusion, is a question of fact, to be determined by trial, not a question of law subject to a motion for summary judgement. This question of fact requires discovery and fact gathering.

V. ANALYSIS OF TRADEMARK INFRINGEMENT: LIKELIHOOD OF CONFUSION

Trademark infringement is analyzed under a two-prong test. First, does plaintiff's mark merit protection. Second, does defendant's use of a similar mark cause consumer confusion or is it likely to cause consumer confusion. . Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072 (2d Cir., 1993).

The defendant argues that Plaintiff's mark does not merit protection. Based on the thorough examination of the application, the registrant's continued use of the Mark and the ultimate registration of the Mark, the Mark merits protection. (Plaintiff makes further arguments supporting the merits of the mark below.)

We turn next to the question of likelihood of confusion. In analyzing this second prong of the test for trademark infringement, courts apply the non-exclusive multi-factor test developed by Judge Friendly in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir., 1961), and consider: (1) the strength of the mark, (2) the similarity of the two marks, (3) the proximity of the products, (4) actual confusion, (5) the likelihood of plaintiff's bridging the gap, (6) defendant's good faith in adopting its mark, (7) the quality of defendant's products, and (8) the sophistication of the consumers.

The similarity of the marks is a key factor in determining likelihood of confusion. Louis Vuitton Malletier v. Burlington Coat Factory, 426 F.3d 532 (2d Cir., 2005) at 537 points out that. "To apply this factor, courts must analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and the 'totality of factors that could

cause confusion among prospective purchasers." Gruner + Jahr USA, 991 F.2d at 1078. It is the totality of the packaging that causes confusion in the consumer.

It requires facts to make the determination called for in the above analysis. It is premature to make this determination. Indeed, in Louis Vuitton Malletier v. Burlington Coat Factory, the Court found that market conditions must be examined closely to see whether the differences between the marks are "likely to be memorable enough to dispel confusion on serial viewing." 426 F.3d at 538. This type of determination cannot be made on an instant motion for partial summary judgement.

The question is not whether people will confuse the marks, but whether the marks will confuse people into believing that the goods they identify come from the same source. In re West Point-Pepperell, Inc., 468 F.2d 200, 175 USPQ 558 (C.C.P.A., 1972). The ultimate purpose of the Trademark Law is to designate the origin of goods to the consumer. In determining whether the marks create the same overall impression, the marks are not to be compared side by side. Recot, Inc. v. M.C. Becton, 214 F.2d 1322, 54 USPQ2d 1894, 1890 (Fed. Cir., 2000); Visual Information Inst., Inc. v. Vicon Indus. Inc., 209 USPQ 179 (TTAB, 1980). The focus is on the recollection of the average purchaser who normally retains a general rather than specific impression of trademarks. Chemetron Corp. v. Morris Coupling & Clamp Co., 203 USPQ 537 (TTA, 1979); Sealed Air Corp. v. Scott Paper Co., 190 USPQ 106 (TTAB, 1975); TMEP §§1207.01(b). Such comparison here causes confusion among the consumers.

Additionally, marks may be confusingly similar in appearance where there are similar terms or phrases or similar parts of terms or phrases appearing in both the Plaintiff's mark and the Defendant's mark. *See e.g.,* Crocker Nat''l Bank v. Canadian Imperial Bank of Commerce, 228 USPQ 689 (TTAB 1986), *aff''d* 1 USPQ2d 1813 (Fed. Cir., 1987), TMEP §§1207.01(b)(ii)

and (b)(iii). Since the defendant's mark contains, at the very least, similar terms or phrases, the defendant cannot argue that the marks do not share any similarities. The defendant can only argue that the Plaintiff's mark does not merit trademark protection. This is the defendant's only possible defense.

The goods even need not be identical or directly competitive to find a likelihood of confusion. However, here the goods are identical, i.e., the same flavored sodas directed to consumers from or descended from the same area, i.e. Ecuador. Instead, they need only be related in some manner, or the conditions surrounding their marketing such that they would be encountered by the same purchasers under circumstances that would give rise to the mistaken belief that the goods come from a common source. On-line Careline Inc. v. America Online Inc., 229 F.3d 1080, 56 USPQ2d 1471 (Fed. Cir., 2000). All circumstances surrounding the sale of the goods are considered. Industrial Nucleonics Corp. v. Hinde, 475 F.2d 1197, 177 USPQ 386 (C.C.P.A.,1973). These circumstances include marketing channels and the identity of the prospective purchasers. In addition to the substantial similarity of the marks, Plaintiff's and the defendant's products are clearly competitive. Both Plaintiff and the defendant manufacture tropical flavored sodas and syrups. Both goods are available in the same stores in the same geographical areas. Consequently, Plaintiff's principal officer, Eric S. Miller, attests that the defendant's particular use of the word "Tropical" with their accompanying designs are so similar to Plaintiff's registered Trademark that they cause actual confusion and are likely to cause continued confusion. This exact style of lettering and colors were selected to create confusion in the market place so as to generate sales.

## VI. THE LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is on the moving party to establish that there are no genuine issues of material fact in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). This standard has not been met. A court deciding a motion for summary judgment must view the facts in the light most favorable to the non- moving party, drawing all reasonable inferences in his or her favor. See Young v. County of Fulton, 160 F.3d 899, 901 (2d Cir., 1998). "When no rational juror could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir., 1994)

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. EZ-Tixz, Inc. v. Hit-Tix, Inc., 919 F.Supp. 919 (S.D.N.Y., 1996),

THERE IS evidence in the record. There is a registration of a trademark, originally used and filed by Banco Del Pacifico, S.A., and ultimately assigned to Plaintiff hereunder. Despite all

10

the evidence of communications and correspondences, of waivers and disclaimers, the United States Patent and Trademark Office issued the registration for the TROPICAL PURO SABOR NACIONAL mark to Banco Del Pacifico, S.A..

Additionally, the accompanying Affidavit of Eric S. Miller further establishes that actual confusion among consumers exists due to the similarity between the marks and designs used by Defendant and Plaintiff's registered Trademark. This confusion is in the market place in this district. Consumers in the marketplace in this jurisdiction cannot and do not distinguish between these two products by their appearances.

Mr. Miller also alleges that such continued use of similar marks and names by Defendant is likely to cause continued confusion in the marketplace between Plaintiff's beverage and Defendant's beverage. This has caused actual confusion.

Finally, as the Affirmation of Jeffrey E. Jacobson, dated April 11, 2008 avers, there have been no depositions, answers to interrogatories, or admissions on file. It is much too early in the prosecution of this matter to entertain a motion for summary judgement. Defendant's motion for partial summary judgement further presumes that no other facts have been presented in the history of this case.

On a motion for summary judgment, the "fundamental maxim is that the court cannot try issues of fact; it can only determine whether there are issues to be tried." Levine v. McDonald's Corp., 735 F.Supp. 92, 95 (S.D.N.Y. ,1990) citing Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 58 (2d Cir., 1987).

In evaluating evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. See T. W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir., 1987).  That it may be speculated that the non-moving party is unlikely to prevail at trial is insufficient to justify summary judgment against him, Jobson v. Henne, 355 F. 2d 129, 133 (2d Cir., 1966).

The allegations of likelihood of confusion themselves require the Court to review a number of factors.

To determine whether there is a likelihood of confusion under the trademark statute, courts consider a number of factors, including: a) the strength or distinctiveness of the mark; b) the similarity of the two marks; c) the similarity of the goods/services the marks identify; d) the similarity of the advertising used by the two parties; e) the defendant's intent; and f) actual confusion  (See Sun-Fun Products v. Suntan Research & Development, 656 F.2d 186, 189 (5th Cir., 1981)).

Plaintiff owns the exclusive rights to use a valid trademark issued by the U.S. Patent and Trademark Office. There are allegations that the Defendant's use of its own mark is likely to cause confusion with Plaintiff's mark. This has happened.

The Defendant's Motion would have the Court rule that likelihood of confusion cannot exist as a matter of law. Plaintiff cannot provide evidence of many relevant facts without the

benefit of any discovery in this case.

## CONCLUSION

Accordingly, Defendant's Motion for Partial Summary Judgement on Claims I, II, and VI of the Amended Complaint should be denied in its entirety

| | |
|---|---|
| New York, NY<br>April 11, 2008 | /Jeffrey E. Jacobson/<br>Jacobson & Colfin, P.C.<br>Jeffrey E. Jacobson (JJ 1199)<br>Bruce E. Colfin (BC 5815)<br>Attorneys for Plaintiff<br>60 Madison Avenue, Suite 1026<br>New York, NY 10010<br>212 691 5630 |

To:

Edwin D. Schindler (ES 7882)
Attorney for Defendant
5 Hirsch Avenue
P.O. Box 966
Coram, NY 11727-0966

cl/lit/ecuabevsumjopp.mem