```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
BROOKLYN BOTTLING OF MILTON,           :
NEW YORK, INC.,                        :      Index No. 07 CIV 8483 (AKH)
                    Plaintiff,         :
                                       :
                                       :
     -against-                         :      AFFIDAVIT IN OPPOSITION
                                       :
ECUABEVERAGE, CORP.                    :
                    Defendant.         :
-------------------------------------------------------X

STATE OF NEW YORK      )
                       )ss:
COUNTY OF KINGS        )
```

ERIC MILLER, being duly sworn, deposes and swears under the penalty of perjury that:

1. I am President as well as Chief Executive Officer of the Plaintiff, Brooklyn Bottling Company of Milton, New York, Inc., ("Plaintiff").

2. I am fully familiar with the facts of this matter and I respectfully submit this affidavit in Opposition to the Defendant's Motion for Sanctions.

3. Defendant Ecuabeverage, Corp., uses marks in trade that are so confusingly similar to Plaintiff's TROPICAL PURO SABOR NACIONAL trademark which has been registered with the United States Patent and Trademark Office that Defendant is likely to cause confusion in the marketplace and has actually caused confusion for the beverage products Plaintiff manufactures and distributes.

4. Defendant Ecuabeverage also imports beverages from Ecuador which are bottled by Plaintiff's Licensor of this beverage, and these include elements of Plaintiff's Mark. Defendant subsequently affixes its own label, thus confusing the consumer as to the legitimate source of the goods.

5. It is Defendant's intention to cause confusion between their beverage product and beverage products whose fame and tradename originated in Ecuador.

6. The consumers of this beverage are typically Ecuadorian nationals and individuals of Ecuadorian descent.

7. Plaintiff's brand is an extremely popular beverage in Ecuador and many immigrants and their extended families drink the beverage here in the United States.

8. I met with counsel, Mr. Jacobson, and had him examine the typically sized, 12 fluid ounce beverage cans as well as bottles from both plaintiff's and defendant's beverages.

9. I brought counsel the labels attached to 2 liter bottles and the packaging on the 12 fluid ounce cans of both plaintiff and defendant's beverages.

10. Attached as exhibits "A1 - A3", are photographs of some of those exhibits. The first photograph ("A-1") shows, in the background, the outside box of a dozen 12 fluid ounce cans of plaintiff's product featuring strawberry flavored beverages.

11. In the right foreground is a 12 fluid ounce can of defendant's product next to a 12 fluid ounce can of Plaintiff's product, both featuring strawberry flavored beverage.

12. In the left foreground is a 2 liter bottle of defendant's product featuring this

strawberry flavored beverage.

13. Counsel saw the significant similarities between Defendant's can and bottle label and Plaintiff's.

14. Closer photographs of the exhibits "A2-A3" demonstrate additional specific and singular elements that are part of plaintiff's trademark and trade dress which have been utilized in a similar manner by defendant.

15. Additionally, the selections of coloration on both can and bottle by defendant, appear to be confusingly similar to plaintiff's cans and bottle labels.

16. Looking at defendant's product, I see the word "Tropical". This word is predominant on both Plaintiff's and Defendant's product.

17. " Tropical " is one, albeit important, element of Plaintiff's entire Mark.

18. Defendant uses other elements of Plaintiff's Mark as well.

19. Although the specific font used by plaintiff and defendant for the word "Tropical" are slightly different, they both utilize dark blue in a scripted form on a yellow background. These scripts are similar in the eyes of the consumer of this beverage.

20. The yellow background is further highlighted by a red border. Plaintiff's red border is unbroken, Defendant's border is broken. The red is the same exact shade and color on both.

21. Slight differences in coloration and label copy are typically what an imitator will do in order for there to be an argument against infringement.

22. The dark blue color used by plaintiff and the dark blue color used by defendant are

3

23. Defendant's product uses the words "puro sabor Ecuatoriano"

24. "Puro sabor" are two elements of plaintiff's trademark that are incorporated in a very similar style and location on defendant's product's packaging.

25. Plaintiff's product label refers to Ecuador as the place in which the flavor (syrup) is made or originates from (Hecho En).

26. La Original Desde 1952 means the original since 1952.

27. Nacional is the final element of plaintiff's mark.

28. Defendant has placed the word Ecuador instead of the word Nacional as the final element of the phrase "Tropical puro sabor".

29. Ecuador is the " Nacional " that Plaintiff refers to as an element of the Mark.

30. Defendant chose Ecuatoriano with purpose, to confuse the consumer as to the origin of the product in the bottle or can.

31. It is significant that on both 12 Fl. Oz.. can and 2 liter bottle, that defendant uses an ® symbol in very close proximity to the word TROPICAL.

32. Plaintiff uses the ® symbol as required by the USPTO to denote that the entire MARK is a registered trademark.

33. Also attached as Exhibits B are photographs as evidence in support of Plaintiff's allegations that Defendant has apparently been purchasing bottles of the beverage in Ecuador, which bear Plaintiff's Trade Dress and has been importing same into the United States without

authority.

34. Exhibit B2 shows Plaintiff's 12 Fl. oz can next to an authorized 300 cubic centimeter bottle bottled in Ecuador by Baloru.(plaintiff's licensor). Both bottle and can bear the same authorized trade dress while the can depicts the entire MARK.

35. Defendant has actually been affixing its own nutrition fact label which includes Defendant as the source of the product. (See attached exhibit "B5")

36. These are examples of the Defendant's intentional course of conduct which led Plaintiff to commence this action.

37. Prior to this lawsuit, Plaintiff had licensed the Mark and had been bottling the beverage in the United States under those licenses.

38. Royal Signature Inc. ultimately assigned the mark to Plaintiff, the assignment having been recorded with the U.S. Patent & Trademark Office on February 15, 2008.

39. Plaintiff is now the registered owner of the MARK and has continued marketing the beverage.

40. Defendant's use of its mark actually confuses the consumer as to the source of the goods. The Ecuadorians and Ecuadorian - American consumers that enjoy this drink are confused as to which is the actual genuine Ecuadorian product.

41. My salespeople and field staff have observed confusion between the products made by Plaintiff and Defendant as to the source of these confusingly similar beverage products in the marketplace.

42. Defendant's continued use of Plaintiff's marks in this manner are intended and calculated to cause further confusion with Plaintiff's mark and causes damage to Plaintiff's reputation.

43. Defendant may be actually using Plaintiff's label and Trademark to develop recognition in the marketplace for the consumer to think that Plaintiff's product's are created for and distributed by Defendant.

44. Based upon the facts and the law I respectfully ask that this Court deny Defendant's motion for Sanctions against Plaintiff and/or its Counsel, and that the Court grant whatever other relief it deems just and proper.

45. Exhibit "A3" shows defendant's product with the words "Producto Original Ecuatoriano" on top. This is designed to further confuse their beverage with mine.

46. Lastly, the color of their soda has been intentionally engineered so as to be as close to mine as possible. Their beverage appears as an orange tinted pink, as mine, which is unlike the average strawberry soda, which is a normal pink color.

*E. M [signature]*

Eric Miller, President/Chief Executive Officer
Brooklyn Bottling of Milton, New York, Inc.

Sworn to before me
this *17th* day of *June, 2008*

_____
Notary Public

EDDY R. SALDAÑA
Notary Public, State of New York
No. 01SA6123796
Qualified in Queens County
Comission Expires March 14, 2009

cli/lit/bklyn/ECUAbev/SanctionsMillerafdinoppsanctions

6