```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X :
BROOKLYN BOTTLING OF MILTON,       :
NEW YORK, INC.,                    :         C.A. No.  07 CIV 08483 (AKH)
                   Plaintiff,      :
                                   :
                                   :
                                   :
                                   :
       -against-                   :         AFFIDAVIT IN OPPOSITION
                                   :         TO DEFENDANT'S MOTION
ECUABEVERAGE, CORP.,               :         FOR SANCTIONS
                   Defendant.      :
------------------------------------------------------X :

STATE OF NEW YORK     )
                      )ss:
COUNTY OF NEW YORK    )
```

JEFFREY E. JACOBSON, a member of the Bar of the State of New York and this Court, deposes and swears under the penalty of perjury that:

1. I am a member of the firm of Jacobson & Colfin, P.C., and Counsel for Brooklyn Bottling Company of Milton, New York, Inc. (hereinafter Plaintiff).

2. I am fully familiar with the facts of this matter and I respectfully submit this Affidavit in Opposition to the Motion by Defendant for Sanctions.

3. I am lead counsel in this matter and met several times with my client's principal officer, Eric Miller, prior to initiating any action on Plaintiff's behalf.

4. Counsel for Defendant is wrong in its attempt to seek sanctions against Plaintiff and its

1

Counsel.

5. Neither Plaintiff, nor its counsel, my firm, has acted unreasonably in filing the claims in the action.

6. The claims against Defendant have merit and are supported by facts.

7. The instant case has not been brought in bad faith, nor has suit been filed, or a paper been filed, as a means to harass Defendant.

8. Neither Plaintiff, nor its Counsel, has filed any document nor pleading for any reason other than to seek a judicial resolution to a legitimate claim.

9. As Plaintiff stated in its recent Opposition to Defendant's Motion for Partial Summary Judgement, there are numerous facts, taken together with the law, that make Defendant's Motion for Partial Summary Judgement and Defendant's subsequent Motion for Sanctions untenable.

10. Defendant's counsel makes up arguments, ignores the law, and surmises fact where there are none.

11. An example of such surmise is his statement in Support of Defendant's Motion for Sanctions that Plaintiff somehow admitted to lacking evidentiary support for allegations contained in the Amended Complaint.

12. Looking more closely at paragraph 10 of Plaintiff's Statement of Material Facts in Opposition to Defendant's Motion for Partial Summary Judgement on Counts I, II and VI, I see no admission other than Plaintiff stating it did not have enough knowledge or information to

determine if any of Defendant's allegations are indeed factual. That sounds closer to a denial than an admission.

13. Plaintiff conceded nothing other than its inability to determine if what Defendant stated was true.

14. More germane to Defendant's instant Motion for Sanctions, and relevant to the Defendant's prior Motion for Partial Summary Judgement are real facts as sworn to by Plaintiff's President and Chief Executive Officer, as well as demonstrative evidence, as furnished in the exhibits included in the previously filed Opposition to Defendant's Motion for Partial Summary Judgement, and as again furnished herein, attached to the affidavit of Mr. Eric Miller.

15. Additional evidence in support of Plaintiff's claims are found in the attached affidavits of Reynaldo Castillo, Luis Botero, and Carlos Diaz.

16. Counsel for the Defendant shows a very single minded view of the Trademark laws. He ignores the rule of law, and bends facts to fit his argument. His argument and this perversion of the facts must fail.

17. Due to Defendant's choice to seek sanctions against Plaintiff's counsel, I have been forced to reiterate facts to justify actions already known by Defendant to be valid pursuant to the law.

18. Prior to commencing this action on behalf of Plaintiff, I examined typically sized 12 fluid ounce beverage cans as well as 2 liter bottles containing both plaintiff's and defendant's

beverages.

19. I also examined the labels attached to the 2 liter bottles and the packaging on the 12 fluid ounce cans of both plaintiff's and defendant's beverages.

20. Subsequently, I examined a 300 cubic centimeter bottle of what was described to me as Plaintiff's Assignor's beverage. It had Plaintiff's trade dress and a nutrition fact label bearing Defendant's name as importer and distributor.

21. Attached as exhibits "A1" through " A3" and "B1 through B5" to the accompanying affidavit of Eric Miller are photographs of some of those exhibits provided to me.

22. It was obvious to me that there were significant similarities between Defendant's beverage containers and Plaintiff's.

23. Mr. Miller told me that Plaintiff had an exclusive license for the registered trademark TROPICAL PURO SABOR NACIONAL for soft drink beverages.

24. Some specific and singular elements that are part of plaintiff's trademark are utilized in a similar manner by defendant.

25. The choices of coloration, and placement, which are essential elements of Trade Dress, on both Defendant's cans and bottles appeared very similar to plaintiff's cans and bottles.

26. Slight differences in coloration and label copy are typically what an imitator will do in order for there to be a defense against infringement.

27. Looking at defendant's product, I see the word "Tropical". This word is predominant

on both Plaintiff's and Defendant's product.

28. Although the specific font used by plaintiff and defendant for the word "Tropical" is slightly different, they both use dark blue in a scripted form on a yellow background. These scripts are similar in the eyes of the consumer.

29. The yellow background is further highlighted by a red border. The red is the same exact shade and color on both. Plaintiff's red border is unbroken, Defendant's border is broken. The dark blue color used by plaintiff and the dark blue color used by defendant are almost identical on the cans; whereas, the blue is darker on defendant's 2 liter bottle label. These slight differences are what an imitator will do in order to create a defense to infringement.

30. Defendant's product uses the words "puro sabor Ecuatoriano."

31. "Puro sabor" are two elements of plaintiff's trademark that are incorporated in a very similar style and location on defendant's products' packaging.

32. I was informed that Ecuador is the nation of origin for the distinct and unique flavor that plaintiff's MARK is known for and associated with.

33. Plaintiff's product label refers to Ecuador as the place where the flavor is made or originates from (Hecho En).

34. Nacional is the final element of plaintiff's mark.

35. Defendant has placed the word Ecuatoriano (translated as Ecuadorian) instead of the word Nacional as the final element of the Plaintiff's MARK "Tropical Puro Sabor Nacional".

36. Defendant replaced the word Nacional, the final element of Plantiff's Mark "Tropical Puro Sabor Nacional," with the word Ecuatoriano (translated as Ecuadorian).

37. It was significant to me that on both the 12 fl. oz. can and 2 liter bottle, Defendant uses an ® symbol in very close proximity to the word TROPICAL.

38. As a practitioner in the field of trademark law, I knew that Plaintiff uses an ® symbol as required by the USPTO to denote that the MARK is a registered trademark.

39. On both the 12 fl. oz. can and 2 liter bottle, the defendant uses an ® symbol in very close and similar proximity to the word TROPICAL.

40. Without registration, Defendant is prohibited from utilizing the ® symbol in association with any Trademark.

41. With that knowledge, why would Defendant use the ® symbol in association with the word Tropical or any other element of Plaintiff's MARK?

42. Perhaps Defendant was mistaken in affixing the ® symbol on its label. Perhaps it was deliberately put there to cause confusion with Plaintiff's MARK. These all demonstrate a valid basis for causes of action for Trademark Infringement, Unfair Competition, and Trade Dress Infringement.

43 . At the meeting with Mr. Miller, I was informed that Plaintiff had an exclusive license agreement with Royal Signature, Inc. ("ROYAL"), the registrant of the federal trademark registered with the United States Patent and Trademark Office ("USPTO") for TROPICAL

PURO SABOR NACIONAL ("the MARK") in class 32 for soft drinks and flavored syrups used in the preparation of making soft drinks.

44. Subsequent to my meeting with Mr. Miller, the C. E. O. of Plaintiff, I used the internet to access the United States Patent and Trademark Office Trademark Electronic Search System ("TESS").

45. On January 26, 1988, the MARK, in its entirety, was registered with the USPTO by Banco Del Pacifico, S.A.

46. The registrant had claimed that the MARK had been used, in its entirety, in commerce and interstate commerce since April 19, 1966.

47. Subsequently, on July 15, 1988, Banco Del Pacifico, S.A. assigned the entire interest and goodwill to Baloru International, Inc.

48. On November 24, 2006, Baloru International, Inc. assigned the entire interest to Royal Signature, Inc.

49. Prior to this lawsuit, Plaintiff had licensed the mark from Royal Signature Inc. and marketed the beverage under the trademark.

50. I reviewed the basic registration information and trademark status and, amongst other information, saw that no claim was made to the exclusive right to use "puro sabor" apart from the mark as shown.

51. I also knew from a cursory examination using the TESS system that no exclusive

claim could be made to the word "TROPICAL" by itself, for soft drinks.

52. Nonetheless, as a practitioner with some degree of knowledge of trademark law, I knew that the words "apart from the mark as shown" had legal significance.

53. Defense counsel would like the Court to believe that it meant that these words cannot be protected. Defense counsel is wrong.

54. Plaintiff could not claim an exclusive right to use the word "Tropical," or the words "puro sabor," by themselves, in the same or similar classes of goods.

55. But used together, the words "Tropical Puro Sabor Nacional" were perfectly valid for use as a trademark for soft drink beverage class of goods.

56. In 1988, the USPTO obviously felt that the MARK, in its entirety, was appropriate as a registered trademark for the goods associated with the MARK.

57. I was told that the MARK had been used in interstate commerce in association with the beverages for approximately 42 years.

58. The MARK has been registered as a trademark with the USPTO for approximately 20 years.

59. It was reasonable for me to consider this Mark to be a valid and strong mark.

60. It is unreasonable for Defense counsel to think that he can turn back time to 1988 and oppose the registration of the MARK by the USPTO today.

61. Twenty years of continuous use in interstate commerce subsequent to registration is not something that Defendant can now explain away by arguing that each separate element of a perfectly valid mark is by itself not protectable. This argument is not supported by the law.

62. Defendant's choice of wording and placement was very similar to Plaintiff's Mark.

63. Taken together with all the other elements of Plaintiff's label design and choice of other words, it was reasonable to see that Plaintiff had legitimate claims against Defendant.

64. Any competent attorney, knowledgeable in the field of Trademarks and Unfair Competition would agree that filing suit on behalf of the Plaintiff was a reasonable action.

65. Subsequent to filing the original complaint, and realizing that Plaintiff perhaps lacked standing to sue, Plaintiff acquired the MARK from its former licensor and amended the complaint.

66. The complaint was amended early enough in the action so that there was no significant additional cost or prejudice to any party.

67. Any mistake in the chain of title as drafted in the complaint was not purposefully done nor was it meant to deceive. The mistake in the chain of title as presented in the Amended Complaint has no bearing on the result in the present matter and does not prejudice defendant in any way.

68. The mistake was not vexatious nor meant to harass. Nor did the mistake in fact cause any harassment to Defendant.

69. The amendment of the complaint and the prosecution of this matter is neither frivolous nor meant to harass defendant.

70. Plaintiff has legitimate causes of action which are validly brought before a Court of competent jurisdiction.

71. Indeed it is defendant's deliberate motion practice, seeking a premature motion for partial summary judgement without the benefit of any discovery and the instant motion for sanctions, which seems to lack legitimacy.

72. Defendant's counsel sought a motion for partial summary judgement which any competent attorney knowledgeable in field of trademarks would know was untenable.

73. Subsequently, and shortly thereafter, without waiting on a decision from the Court on Defendant's Motion for Partial Summary Judgement, Defendant brought the instant sanctions motion knowing that none of the requirements for sanctions against Plaintiff or its counsel were met.

74. Arguably Defendant's motion for sanctions against Plaintiff and its counsel was instituted for an improper purpose.

75. Defendant's counsel has full knowledge of the validity of plaintiff's case.

76. There is ample case law to support Plaintiff's opposition to both the prior motion for partial summary judgement and the instant motion for sanctions.

77. Consequently, Plaintiff and Plaintiff's Counsel respectfully pray that this Court deny

Defendant's Motion for Sanctions in all respects and the Court provide any further relief it deems just and proper.

/Jeffrey E. Jacobson/
Jeffrey E. Jacobson
Jacobson & Colfin, P.C.
Attorney for Plaintiff
60 Madison Avenue, Suite 1026
New York, NY 10010
212-691-5630

Sworn to me this 20th day of June, 2008

/s/
Notary Public

BRUCE E. COLFIN
NOTARY PUBLIC, State of New York
No. 02CO4848139
Qualified in Nassau County
Commission Expires July 31, 2009

cli/lit/BklynECUA/sanctions/Afdjejinoppsanctions

11