UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X :
BROOKLYN BOTTLING OF MILTON,          :
NEW YORK, INC.,                       :          07 CIV 08483 (AKH)
               Plaintiff,        :
                                     :
                                     :
                                     :
     -against-                   :
                                     :
ECUABEVERAGE, CORP.                   :
               Defendant.        :
-------------------------------------------------------X :

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS

Of Counsel:
Jeffrey E. Jacobson (JEJ 1199)
Bruce E. Colfin (BEC 5815)

                        Jacobson & Colfin, P.C.
                        Attorneys for Plaintiff
                        60 Madison Avenue, Suite 1026
                        New York, NY  10010
                        212-691-5630

TO:
Edwin D. Schindler (ES 7882)
Attorney for Defendant
5 Hirsch Avenue
P.O. Box 966
Coram, NY 11727-0966

# **TABLE OF CONTENTS**

TABLE OF CASES & AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

THE STANDARDS FOR ASSESSING THE PROPRIETY OF
THE SIGNER'S CONDUCT UNDER RULE 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

A TRADEMARK IS VIEWED IN ITS TOTALITY, NOT IN PARTS . . . . . . . . . . . . . . . . . . 7

PLAINTIFF'S REGISTERED MARK IS INCONTESTABLE . . . . . . . . . . . . . . . . . . . . . . . . 9

ANALYSIS OF TRADEMARK INFRINGEMENT:
LIKELIHOOD OF CONFUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

DEFENDANT'S LINE OF CASES ARE DISTINGUISHABLE . . . . . . . . . . . . . . . . . . . . . . 14

EVIDENCE TO SUPPORT THE ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

TABLE OF CASES & AUTHORITIES

American Cyanamid Corp. v. Connaught Laboratories, Inc., 800 F.2d 306 (2d Cir., 1986) . . . . 14

Caisse Nationale De Credit Agricole-CNCA v. Sarasohn, 28 F.3d 259, 264 (2d Cir., 1994) . . . . 6

Car-Freshner Corp. v. Turtle Wax, Inc., 268 F. Supp. 162, (S.D.N.Y. 1967) . . . . . . . . . . . . . . 10

Chemetron Corp. v. Morris Coupling & Clamp Co., 203 U.S.P.Q. 537 (TTAB, 1979) . . . . . . 12

Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (U.S. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Crocker Nat''l Bank v. Canadian Imperial Bank of Commerce,
228 U.S.P.Q. 689 (TTAB 1986), aff''d 1 U.S.P.Q. 2d 1813 (Fed. Cir., 1987) . . . . . . . . . . . . . 12

De La Fuente v. DCI Telecomms., Inc., 259 F. Supp. 2d 250 (S.D.N.Y., 2003) . . . . . . . . . . . . . 15

Eastway Construction Corp. v. City of New York, 762 F.2d 243 (2d Cir., 1985) . . . . . . . . . 6, 15

EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,
228 F.3d 56, 61 (2d Cir., 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072 (2d Cir., 1993) . . . . . . . . . . 10,11

Industrial Nucleonics Corp. v. Hinde,
475 F.2d 1197, 177 U.S.P.Q. 386 (C.C.P.A., 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Equitable Bancorporation, 229 U.S.P.Q. 709 (TTAB, 1986) . . . . . . . . . . . . . . . . . . . . . . . 8

In re El Torito Restaurants Inc., 9 U.S.P.Q. 2d 2002 (TTAB, 1988) . . . . . . . . . . . . . . . . . . . . . 8

In re Kunstler, 914 F.2d 505 (4th Cir. N.C., 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re September 11th Liab. Ins. Coverage Cases, 243 F.R.D. 114, 124 (S.D.N.Y., 2007) . . . . . 16

In re West Point-Pepperell, Inc., 468 F.2d 200, 175 U.S.P.Q. 558 (C.C.P.A., 1972) . . . . . . . . 12

Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844 (1982) . . . . . . . . . . . . . . . . 10

J. Wiss & Sons Co. v. W. E. Bassett Co., 462 F.2d 567 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . 10

Kamen v. American Telephone & Telegraph Co., 791 F.2d 1006, 1011-12 (2d Cir., 1986) . . . . 7

Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108 (2d Cir., 2006) . . . . . . . . . . . 8

Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.,
426 F.3d 532 (2d Cir., 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Mareno v. Rowe, 910 F.2d 1043, 1047 (2d Cir., 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Mercury Air Group, Inc. v. Mansour, 237 F.3d 542 (5th Cir. Tex. 2001) . . . . . . . . . . . . . . . . . 16

Official Publications, Inc. v. Fredericks, 884 F.2d 664, 670 (2d Cir., 1989) . . . . . . . . . . . . . . . . 6

On-line Careline Inc. v. America Online Inc.,
229 F.3d 1080, 56 U.S.P.Q. 2d 1471 (Fed. Cir., 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189 (1985) . . . . . . . . . . . . . . . . . . . . . . . 10

Paul Oliveri v. Joseph Thompson, et. al., 803 F. 2d 1265 (2d Cir., 1986) . . . . . . . . . . . . . . . 6, 7

Pharmacia Corp. v. Alcon Labs., Inc., 201 F. Supp. 2d 335 (D.N.J., 2002) . . . . . . . . . . . . . . . 14

Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir.,1961) . . . . . . . . . . . . 11

Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Recot, Inc. v. M.C. Becton  214 F.2d 1322 (Fed. Cir.,  2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Sealed Air Corp. v. Scott Paper Co., 190 U.S.P.Q. 106 (TTAB,  1975) . . . . . . . . . . . . . . . . . . . 12

Storey v. Cello Holdings, L.L.C., 347 F.3d 370 (2d Cir. N.Y., 2003 . . . . . . . . . . . . . . . . . . . . . . 16

Szabo Food Serv. v. Canteen Corp., 823 F.2d 1073 (7th Cir. Ill. 1987) . . . . . . . . . . . . . . . . . . . 16

Tektronix, Inc. v. Daktronics, Inc., 534 F.2d 915, 189 U.S.P.Q. 693 (C.C.P.A., 1976) . . . . . . . . 8

United States v. Int'l Bhd. of Teamsters, 948 F.2d 1338, 1344 (2d Cir., 1991) . . . . . . . . . . . . . . 7

Visual Information Inst., Inc. v. Vicon Indus. Inc., 209 U.S.P.Q. 179 (TTAB, 1980) . . . . . . . . 12

Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 209 (2000) . . . . . . . . . . . . . . . . . . . 8

Statutes

15 U.S.C. § 1065 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 1115(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15 U.S.C. § 1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15 U.S.C. § 1155(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Treatises

McCarthy on Trademarks § 15:35 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X :
BROOKLYN BOTTLING OF MILTON,            :
NEW YORK, INC.,                         :          07 CIV 08483 (AKH)
                          Plaintiff,    :
                                        :
                                        :

      -against-                         :
                                        :
ECUABEVERAGE, CORP.                     :
                          Defendant.    :
-----------------------------------------------------X :

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SANCTIONS

### PRELIMINARY STATEMENT

This Memorandum of Law is submitted by Plaintiff Brooklyn Bottling of Milton, New York, Inc., in opposition to Defendant Ecuabeverage, Corp.'s Motion for Sanctions.

It is respectfully submitted that Defendant's counsel is using motion practice as a tactic meant to harass Plaintiff.

Defendant's actions, from its previous, premature motion for partial summary judgement to the present motion for sanctions, are based on Defendant's misunderstanding of the law involving trademarks and trade dress infringement.

The actions taken by the Defendant's counsel are vexatious, harassing, and are meant to keep plaintiff from having its entitled day in Court.

1

STATEMENT OF FACTS

The pertinent facts with regard to the instant motion are more fully set forth in the accompanying affidavit of Eric S. Miller and the affidavit of Jeffrey E. Jacobson, Attorney for Plaintiff.

The following is a summary of the history and chain of title of the mark "TROPICAL PURO SABOR NACIONAL" (hereinafter referred to as "The MARK") based upon the records held by the United States Patent and Trademark Office (hereinafter referred to as "USPTO").

The MARK has been used, in its entirety, in commerce and interstate commerce since April 19, 1966.

On January 26, 1988, after almost twenty two years of continuous use in interstate commerce, the MARK, in its entirety, was registered with the USPTO by Banco Del Pacifico, S.A.

Subsequently, on July 15, 1988, Banco Del Pacifico, S.A. assigned the entire interest and goodwill to Baloru International, Inc.

On November 24, 2006, Baloru International, Inc. assigned the entire interest to Royal Signature, Inc. which ultimately entered into an exclusive license with Plaintiff for certain territories of the United States.

On or about February 11, 2008, Royal Signature, Inc. assigned the entire interest to Plaintiff, Brooklyn Bottling of Milton, New York, Inc.

By virtue of the most recent assignment, Plaintiff acquired whatever standing to sue it may have previously lacked.

Going forward Defendant has not been prejudiced by Plaintiff's acquisition of the entire

2

interest in the trademark.

Subsequent to marketing its own version of the Ecuadoran flavored drink, Defendant began using a label for its strawberry flavored beverage that used no less than three elements of Plaintiff's Mark.

Defendant used a color scheme for a trade dress that was very similar to Plaintiff's color scheme for its trade dress

Defendant, without any authorization from Plaintiff, and without having registered its own mark with the USPTO, used an ® symbol on its product label in close proximity to three elements that bear a very close resemblance to three elements of Plaintiff's MARK.

Additionally, Defendant, or its agent have purchased beverages bottled by Plaintiff's assignor in Ecuador. Defendant has sold these beverages in the assignor's bottles but has affixed its own labels thereto, thus passing off beverages which are bottled by Plaintiff's associates as if they were Defendant's beverage.

Plaintiff has entered into evidence, as exhibits to its opposition to Defendant's motion for partial summary judgement, photographs of Plaintiff's beverages with labels affixed to them by Defendant. Such labels, which include the nutritional requirements, falsely state that the beverages originate with Defendant.

<u>ARGUMENT</u>

Defendant's motion for Sanctions, against both Plaintiff and Plaintiff's counsel, is mostly rhetoric, based upon a theory that plaintiff and counsel failed to conduct a reasonable investigation to determine if Defendant was actually infringing upon the trademark of Plaintiff.

3

Defendant's theory of defense breaks down Plaintiff's MARK into its separate elements. It's theory is that if the separate elements are not capable of protection, then the entire MARK is likewise not capable of protection.

Defendant's argument is based upon a lack of understanding of the law regarding trademarks.

Additionally, Defendant avers that Plaintiff, through Counsel, instituted suit against Defendant when Plaintiff had no standing to do so. Any defect was subsequently cured and an amended complaint was served and consented to at a very early stage of the litigation.

No prejudice or damage has been caused to Defendant by Plaintiff's actions. Plaintiff's actions were neither vexatious nor meant to harass Defendant. Plaintiff is seeking an adjudication of its legitimate rights under the Trademark Law.

Defendant's motion for sanctions states that Plaintiff's complaint lacks evidentiary support for the claim of illegal importation, and that Plaintiff has somehow admitted such as fact. Defendant is wrong.

Plaintiff has shown, in its Opposition to Defendant's prior Motion for Partial Summary Judgement, photographic evidence of such illegal importation. See Affidavit of Eric Miller and Exhibits "B1" through "B5" attached thereto. See also the Affidavit of Luis Botero.

Defendant's Motion for Sanctions asserts there is no reasonable infringement of Plaintiff's MARK. Defendant states that Plaintiff should have sued a third party company called Freskola whose mark Defendant believes is more similar. However, even if Freskola's mark is more similar to Plaintiff's MARK than Defendant's mark is, Plaintiff is under no obligation to sue Freskola at this moment, and its failure to do so has no bearing on the instant action.

4

Defendant claims that Plaintiff's suit is merit less and frivolous. This assertion goes against the facts and the law regarding trademarks. Plaintiff's pursuit has merit and is not frivolous. Plaintiff does not lack demonstrative evidence. In both Plaintiff's Opposition to Defendant's previously filed Motion for Partial Summary Judgement, and the attachment to the affidavit of Eric Miller herewith as Exhibits "A1" through "A3" are photographs of Defendant's bottles and cans side by side with Plaintiff's beverage containers.

These pictures show that there are sufficient similarities in the separate elements of Plaintiff's Mark to justify Plaintiff's counsel, as competent attorneys in the area of trademark law, to proffer claims against Defendant for infringement based upon law as supported by the facts.

It seems that Defendant counsel's arguments for sanctions are based upon Plaintiff's failure to understand that there is no exclusive right to use the word "Tropical", "Puro" or "Sabor". Unfortunately for Defendant, that reasoning must be seen in the light of the law of trademarks and trade dress.

Defense counsel does not recognize the important concept of likelihood of confusion which views a MARK and Trade dress in the context of a wide range of factors.

Defendant's sanction motion is merely another attempt to avoid liability for illicit behavior and to prevent Plaintiff from enforcing its legitimate rights.

Defendant's counsel threatened this motion from the beginning of the case to intimidate the Plaintiff into dropping its pursuit of its rights.

5

THE STANDARDS FOR ASSESSING THE PROPRIETY
OF THE SIGNER'S CONDUCT UNDER RULE 11

The standards for assessing the propriety of the signer's conduct in the Second Circuit under Rule 11 were articulated in <u>Eastway Construction Corp. v. City of New York</u>, 762 F.2d 243 (2d Cir., 1985).  <u>Eastway</u> disposed of the notion that an attorney's subjective good faith could serve as a "safe harbor" against the imposition of sanctions, and established an objective standard, holding that sanctions shall be imposed when it appears that a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in the paper. <u>Id</u>.

The Court, in <u>Paul Oliveri v. Joseph Thompson, et. al.</u>, 803 F. 2d 1265 (2d Cir., 1986) went further in defining the standard.  The Court said that Federal Rule of Civil Procedure 11(b)(2) provides: "By presenting to the court . . . a pleading . . . an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." <u>Id</u>.

Seeing the potential for abuse, a line of cases in the Second Circuit further defined the limits of sanctions motions. "[N]ot all unsuccessful legal arguments are frivolous or warrant sanction." <u>Mareno v. Rowe</u>, 910 F.2d 1043, 1047 (2d Cir., 1990).

"An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an 'objective standard of reasonableness,' it is 'clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.'" <u>Caisse Nationale De Credit Agricole-CNCA v. Sarasohn</u>, 28 F.3d 259, 264 (2d Cir., 1994). *See also* <u>Official</u>

6

Publications, Inc. v. Fredericks, 884 F.2d 664, 670 (2d Cir., 1989) ("Rule 11 is violated when it is patently clear that a claim has absolutely no chance of success."); United States v. Int'l Bhd. of Teamsters, 948 F.2d 1338, 1344 (2d Cir., 1991).

"As a final matter we note that in imposing rule 11 sanctions, the court is to avoid hindsight and resolve all doubts in favor of the signer.  As we stated in Eastway, rule 11 is violated only when it is 'patently clear that a claim has absolutely no chance of success.'" Oliveri, 803 F. 2d at 1275 *citing* 762 F. 2d at 254.

A final thought from Oliveri by way of another case seems appropriate when thinking about Defendant's counsel's seeming tactic to forestall judgement by obfuscating the issues with irrelevancies and to harass plaintiff at every step. "A plaintiff does not have to be prepared to meet a summary judgment motion as soon as the complaint is filed". Kamen v. American Telephone & Telegraph Co., 791 F.2d 1006, 1011-12 (2d Cir., 1986).

Accordingly, the issue for the Court on ruling on this motion is whether or not Plaintiff's conduct and Plaintiff's counsel's conduct is sanctionable.? An understanding of the relevant issues and concepts in trademark law is essential to make that ruling.


## A TRADEMARK IS VIEWED IN ITS TOTALITY, NOT PARTS

Plaintiff's mark, registered with the United States Patent and Trademark Office, registration no. 1474395, is for the phrase TROPICAL PURO SABOR NACIONAL ("the MARK").

In 1988, The United States Patent and Trademark Office examined the TROPICAL PURO SABOR NACIONAL trademark application and found that the MARK, used in

7

commerce since 1966, in its entirety, warranted trademark protection and thereby registered the MARK on the principal register of the USPTO.

In examining trademarks, consumers do not look at the individual elements of a mark. Instead, they look at the totality of the mark. It is the totality of this mark and impression on the consumer that causes the confusion which this law is designed to protect.  The law also considers the type of consumer that is affected.

Section 43(a) of the Lanham Act prohibits a person from using "any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods . . . ." 15 U.S.C. § 1125(a). Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108 (2d Cir., 2006). The purpose of this section is to protect trademarks, trade dress and product designs from infringement by unregistered trademarks. EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 61 (2d Cir., 2000); Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 209 (2000). In the case at bar, protected works are being infringed.

Despite the defendant's argument that disclaimed portions of a mark could be ignored, trademark decisions hold that the examining attorney cannot ignore a disclaimed portion of a mark and must view marks in their entireties. Tektronix, Inc. v. Daktronics, Inc., 534 F.2d 915, 189 U.S.P.Q. 693 (C.C.P.A., 1976); In re El Torito Restaurants Inc., 9 U.S.P.Q. 2d 2002 (TTAB, 1988); In re Equitable Bancorporation, 229 U.S.P.Q. 709 (TTAB, 1986). Even though the TROPICAL PURO SABOR NACIONAL mark may have disclaimed exclusive rights to the individual words "PURO" and "SABOR", these terms are still essential elements of the MARK that cannot be ignored.

These separate and distinct terms are part of the entire mark.  These words attract

8

consumer to this drink. The disclaimer in the registration specifically states that the registrant does not claim the exclusive right to use the two words PURO SABOR apart from the MARK as shown. It is the combination that causes the audience (the consumer) to purchase this beverage. However, the registrant does claim the exclusive right to use the MARK, TROPICAL PURO SABOR NACIONAL. It is the impression that the entirety of a mark projects that is protected.

Whether Defendant's use of any mark or design is likely to cause confusion in the marketplace, or actually causes confusion, remains a question of fact to be determined by trial, not a question of law subject to Defendant's prior motion for partial summary judgement.

## PLAINTIFF'S REGISTERED MARK IS INCONTESTABLE

In accordance with the Lanham Act, a mark that is used in interstate commerce after registration for more than five (5) years is incontestible. Descriptive marks used in commerce for at least five years after registration may be deemed to have acquired secondary meaning. The MARK in the case at bar has been used for over five years.

Having been used exclusively and continuously since its registration on January 26, 1988, the  TROPICAL PURO SABOR NACIONAL mark has been incontestible for more than fourteen years.

The MARK has been used in commerce since 1966. Thus it is also a strong mark.

The United States Patent and Trademark Office website provides the following definition: "An 'incontestable' registration is conclusive evidence of the validity of the registered mark, of the registration of the mark, of the owner's ownership of the mark and of the owner's exclusive right to use the mark with the goods/services. The claim of incontestability is subject to certain limited exceptions set forth in §§15 and 33(b) of the Trademark Act, 15 U.S.C. §§1065

9

and 1115(b)."

"If a mark has become incontestible through five years use after federal registration and compliance with statutory formalities, then any lack of distinctiveness of such a mark cannot be raised in litigation. Lanham Act section 15, 15 U.S.C. §1065.  That is, it is conclusively presumed either that the mark is non-descriptive, or if descriptive, has acquired secondary meaning. Lanham Act § 33(b), 15 U.S.C. § 1155(b)." McCarthy on Trademarks § 15:35. *See also* Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189 (1985).

Secondary meaning develops when "in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself" Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159 (1995). The Court went on to say that color would have come to identify and distinguish the goods -- i. e., "to indicate" their "source" -- much in the way that descriptive words on a product (say, "Trim" on nail clippers or "Car-Freshner" on deodorizer) can come to indicate a product's origin. It goes on to quote a line of cases in which a word (e. g., "Trim"), although not inherently distinctive, had developed "secondary meaning." J. Wiss & Sons Co. v. W. E. Bassett Co.,  462 F.2d 567 (1972); Car-Freshner Corp. v. Turtle Wax, Inc., 268 F. Supp. 162, (SDNY 1967);. See Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844 (1982).

ANALYSIS OF TRADEMARK INFRINGEMENT: LIKELIHOOD OF CONFUSION

Trademark infringement is analyzed under a two-prong test. First, does plaintiff's mark merit protection?  Second, does defendant's use of a similar mark cause consumer confusion or is it likely to cause consumer confusion?  Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d

1072 (2d Cir. 1993).

Defendant argues that Plaintiff's mark does not merit protection. Based on the thorough examination of the application, the registrant's continued use of the MARK and the ultimate registration of the MARK, the MARK merits protection.

We turn next to the question of likelihood of confusion. In analyzing this prong of the test for trademark infringement, courts apply the non-exclusive multi-factor test developed by Judge Friendly in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir., 1961), which considers: (1) the strength of the mark, (2) the similarity of the two marks, (3) the proximity of the products, (4) actual confusion, (5) the likelihood of plaintiff's bridging the gap, (6) defendant's good faith in adopting its mark, (7) the quality of defendant's products, and (8) the sophistication of the consumers.

The similarity of the marks is a key factor in determining likelihood of confusion. Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532 (2d Cir., 2005) (hereinafter "Burlington") points out that "[t]o apply this factor, courts must analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers." Gruner + Jahr USA, 991 F.2d at 1078. It is the totality of the packaging that causes consumer confusion.

Facts are required to make the determination called for in the above analysis. At present, it is premature to make or refute this determination. Indeed, in Burlington, the Court found that market conditions must be examined closely to see whether the differences between the marks are "likely to be memorable enough to dispel confusion on serial viewing." 426 F.3d at 538. This type of determination cannot be made on an instant motion for partial summary judgement and

demonstrates the ultimate reasonableness of the claims in this action and clearly demonstrates why plaintiff should not be sanctioned.

The question is not whether people will confuse the marks, but whether the marks will confuse people into believing that the goods come from the same source. In re West Point-Pepperell, Inc., 468 F.2d 200, 175 U.S.P.Q. 558 (C.C.P.A. 1972). In determining whether the marks create the same overall impression, the marks are not to be compared side by side. Recot, Inc. v. M.C. Becton , 214 F.2d 1322 (Fed. Cir. 2000); Visual Information Inst., Inc. v. Vicon Indus. Inc., 209 U.S.P.Q. 179 (TTAB, 1980). Rather, they should be compared based on the recollection of the average purchaser, who normally retains a general rather than specific impression of trademarks. Chemetron Corp. v. Morris Coupling & Clamp Co., 203 U.S.P.Q. 537 (TTAB, 1979); Sealed Air Corp. v. Scott Paper Co., 190 U.S.P.Q. 106 (TTAB, 1975). Under this analysis, it is reasonable for Plaintiff to pursue its claims and allege that Defendant's mark causes confusion among consumers. Subject to full discovery and the evidence to be presented Plaintiff believes that the evidence will show that Defendant is an infringer and is competing unfairly. Thus the actions of Plaintiff and Plaintiff's counsel are not sanctionable.

Additionally, marks may be confusingly similar in appearance where there are similar terms or phrases or similar parts of terms or phrases appearing in both the Plaintiff's mark and the Defendant's mark. See e.g., Crocker Nat''l Bank v. Canadian Imperial Bank of Commerce, 228 U.S.P.Q. 689 (TTAB 1986), aff''d 1 U.S.P.Q. 2d 1813 (Fed. Cir., 1987).

Since Defendant's mark contains, at the very least, similar terms, colors, and phrases, Defendant cannot argue that the marks do not share any similarities. Defendant can only argue that the Plaintiff's mark does not merit trademark protection and that they are not identical. This

is the Defendant's only possible defense.

The goods need not be identical or directly competitive to find a likelihood of confusion. Instead, they need only be related in some manner, or have the conditions surrounding their marketing such that they would be encountered by the same purchasers under circumstances that would give rise to the mistaken belief that the goods come from a common source. On-line Careline Inc. v. America Online Inc., 229 F.3d 1080, 56 U.S.P.Q. 2d 1471 (Fed. Cir., 2000). All circumstances surrounding the sale of the goods are considered. Industrial Nucleonics Corp. v. Hinde, 475 F.2d 1197, 177 U.S.P.Q. 386 (C.C.P.A., 1973).

These circumstances include marketing channels and the identity of the prospective purchasers. In addition to the substantial similarity of the marks, Plaintiff's and Defendant's products are clearly competitive. Both Plaintiff and Defendant manufacture tropical flavored sodas and syrups. Therefore, the goods are not only identical, i.e., the same flavored sodas, but directly competitive in the same isolated Ecuadorian community.

Both beverages are available in the same stores, in the same geographical areas. Consequently, Plaintiff's principal officer, Eric Miller, attests that Defendant's particular use of the words "Tropical", "Puro", and "Sabor" with the accompanying designs and colors is so similar to Plaintiff's registered Trademark that it causes actual confusion, were designed to cause actual confusion, and are likely to cause continued confusion.

Plaintiff's alleges that Defendant is purchasing bottles of beverages in Ecuador that bear Plaintiff's trade dress, is importing same into the United States and is subsequently affixing Defendant's label prior to offering such bottles of beverages to the consumer. Such allegations, supported by evidence, demonstrates Defendant's intent to cause actual confusion between its

13

beverages and Plaintiff's.

Defendant chose its lettering style and packaging colors to create confusion in the market so as to generate sales. Defendant's label design was created to trade on Plaintiff's customers. What does Defendant say in response? Defendant argues that another manufacturer is closer in design and should be the proper party to suit.

Defendant argues that its use of the elements of Plaintiff's MARK is not identical so sanctions are appropriate to be granted.

Defendant's reasoning ignores intellectual property law.


## DEFENDANT'S LINE OF CASES ARE DISTINGUISHABLE

Defendant also ignores or surmises facts that are not supported by the actual facts in this case. Defendant assumes that Plaintiff and Plaintiff's Counsel's actions are sanctionable and thus believes the line of precedent is relevant to his argument. However, his argument is not supported by the facts and thus the cases are easily distinguished.

Defendant's counsel relies on <u>American Cyanamid Corp. v. Connaught Laboratories, Inc</u>., 800 F.2d 306 (2d Cir., 1986) and assumes that Plaintiff's MARK is generic or descriptive. This argument is specious. Plaintiff's MARK has been in use for 40 years and has been registered with the USPTO for 20 years. Any argument about descriptiveness is many years too late as the MARK has acquired secondary meaning and is incontestable.

Additionally, the court in <u>American Cyanamid Corp. v. Connaught Laboratories, Inc</u>., found no infringement existed partly as a result of the distinctions in the trade dress of the parties' products. There were dramatic differences in the trade dress.

14

In the instant case, Plaintiff's and Defendant's product have the exact same color scheme. Both parties' products have the word "Tropical" predominant, in dark blue stylized script, surrounded by the colors yellow and then red.

Both parties are selling the same strawberry flavored soda to the same consumer market, mainly to those of Ecuadorian origination or descent. In Pharmacia Corp. v. Alcon Labs., Inc., 201 F. Supp. 2d 335 (D.N.J., 2002), a case that cites American Cyanamid Corp., the Court indicates that the relative sophistication of the consumer for a particular market impacts the likelihood of confusion. "The relevant market for the products is a significant factor, particularly when the market consists of sophisticated professionals, purchasers are more likely to recognize elements that distinguish two similar marks and are thus more likely to retain separate mental associations for each of the designations". In the present case, the soft drink consumers are not professionals. The products' trade names and trade dress are so similar that the average, unsophisticated consumer is likely to be confused.

Defendant's counsel's use of Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (U.S. 1990) was unnecessary. According to De La Fuente v. DCI Telecomms., Inc., 259 F. Supp. 2d 250 (S.D.N.Y., 2003), the rule established by Cooter & Gell was partially superceded by the amendment of Rule 11 in 1993 to include a safe harbor provision of 21 days from the service of the motion for sanction in order to give a party an opportunity to withdraw or appropriately correct the challenged paper, claim, defense, contention, allegation, or denial. The fact that Plaintiff did not withdraw was based upon the merit of Plaintiff's case pursuant to law and substantiated by facts.

Eastway Constr. Corp. v. New York, 762 F.2d 243 (2d Cir. N.Y., 1985) is likewise

misconstrued by Defendant's counsel. Certainly, Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a conduct a reasonable inquiry into the viability of a pleading before it is signed. Accordingly, Plaintiff's counsel did so. See the Affidavit of Jeffrey E. Jacobson.

In re Kunstler, 914 F.2d 505 (4th Cir. N.C., 1990) is cited out of Defense counsel's concern with Plaintiff's egregious conduct therein. The allegations of such egregious conduct are not supported by facts in the instant case. One look at the photographs provided as exhibits in opposition to Defendant's previous motion for partial summary judgement, and the photographs provided as exhibits in opposition hereto, gives Plaintiff no choice but to seek vindication of its rights.

The balance of the cases cited by Defense counsel are similarly distinguishable. In Mercury Air Group, Inc. v. Mansour, 237 F.3d 542 (5th Cir. Tex. 2001), counsel's client admits that his claim was inherently baseless, yet still proceeded with the lawsuit. In re September 11th Liab. Ins. Coverage Cases, 243 F.R.D. 114, 124 (S.D.N.Y. 2007) quoting Storey v. Cello Holdings, L.L.C., 347 F.3d 370 (2d Cir. N.Y., 2003) it is stated that ". . .sanctions may not be imposed unless a particular allegation is utterly lacking in support."

Lastly, Defendant's reliance on Szabo Food Serv. v. Canteen Corp., 823 F.2d 1073 (7th Cir. Ill., 1987) is another example of a case used which is not analogous to the present facts. Besides being out of date and based in a different jurisdiction, in this case, like the other cases,

the party receiving the rule 11 violation had committed some really egregious conduct. The party being sanctioned misstated the law and facts, wasting many resources in the process. This is just not the case in the instant action.

## EVIDENCE TO SUPPORT THE ACTION

There is already ample evidence in the record to support Plaintiff's action. There is a registration of an incontestable trademark, filed twenty years ago, and in use in commerce for more than forty years. Despite all the evidence of communications and correspondences, of waivers and disclaimers, the United States Patent and Trademark Office issued the registration for TROPICAL PURO SABOR NACIONAL as a Trademark and granted the original registrant Banco Del Pacifico, S.A., the right and obligation to use an ® symbol on its product label in association with the MARK.

There is a chain of title, filed with the USPTO, from the original registrant down through the present user, Plaintiff.

There are accompanying affidavits of Eric S. Miller with further photographic evidence. There are affidavits from the field staff of another beverage bottling company associated with Plaintiff's principal owner.

There is nothing in the record that establishes that either Plaintiff or its counsel filed any paper in this action for a frivolous or vexatious reason, or as a means to harass.

Finally, as the affidavit of Jeffrey E. Jacobson, dated June 20, 2008 demonstrates, this

instant action is the appropriate proper action against parties who cross the line from merely competing to un-fairly competing.

## CONCLUSION

Accordingly, Defendant's Motion for Sanctions should be denied in its entirety.

New York, NY                    /Jeffrey E. Jacobson/ JEJ1199
June 20, 2008                    /Bruce E. Colfin/ BEC 5815
                                Jacobson & Colfin, P.C.
                                Attorneys for Plaintiff
                                60 Madison Avenue, Suite 1026
                                New York, NY 10010
                                212 691 5630

To: Edwin D. Schindler (ES 7882)
    Attorney for Defendant
    5 Hirsch Avenue
    P.O. Box 966
    Coram, NY 11727-0966

C/L/B/Sanctions/Memo of law in opposition to Ds Motion for Sanctions